Please be seated. Thank you. Please call the next case. 113-604 Anthony Scarpelli v. City of Chicago. Counsel, you may proceed. Justices, I'm Joseph J. Spingal. I represent the appellant in this case, Anthony Scarpelli. The matter is before you because of a series of decisions that were issued by one of the arbitrators at the Industrial Commission. He first issued a decision giving a particular award to Mr. Scarpelli with appropriate findings of fact. There was one small mistake in that first order. It was simply the date of accident. He, on his own motion, recalled that order and issued a corrected decision which then had the wrong findings of fact attached to it. He then recalled the order on my motion and now not only did, in fact, correct and redo the findings of fact from the original decision, but now took the liberties of changing the decision entirely. Whether or not that can be done has been a journey for me, if you will allow me. I want to start by saying that I thought I was going to be here arguing nothing but whether an order is void or not You cannot even mention a Rule 23 order in a brief. That speaker was Judge Holdredge. And with that, I went back to this case and went under the hood and said, I didn't know that. How does that affect my case? And after coming out from under the hood, after further deliberation, I ended up finding there's an exception to what Judge Holdredge said. So now we're here because of the possibility that there is collateral estoppel with respect to whether or not the order in this case is void or not. So we now have a lineup of cases on each side of this issue. We have the Garcia case, which says that when an arbitrator or, for that matter, the commission's decision is recalled under Section 19F, Garcia says it's a nullity. And now we have the Rule 23 decision that says, based upon Favel, a civil case, this is a motion for reconsideration. And the arbitrator certainly had the right to reconsider and change his decision. No question those cases are against me. On the other side of the coin, I've always argued the Smalley decision, which, while it really wasn't a 19F recall, it was a motion to recall, to reopen proofs because of an alleged fraud. There certainly is – the Court spoke to what 19F is. More specifically, Wilson-Raymond is – Wilson-Raymond case says an arbitrator's decision called under 19F cannot be reopened. Petition to – a petition not under 19F seeking reconsideration of an arbitrator's decision is a nullity. Those two cases are on my side. Now – Let me see if I can understand what happened here. The claimant – he could have challenged the arbitrator's May 2009 second corrected decision by seeking review of that decision with the commission, correct? That's correct. That could have been done. He did file a timely petition, as I understand it, but later sought to have it voluntarily dismissed, correct? Isn't that what happened? There's some facts in between filing and dismissed. But ultimately that's what happened, right? Yes. Okay. So the second corrected decision became the final inclusive decision. I mean, it wasn't – how could the commission alter it two years later? I never asked it to alter it. I simply asked it to find it void and to reinstate the original order and simply attach the appropriate findings of fact. Well, how does then the collateral estoppel then? Pardon me? How does the collateral estoppel issue enter into the statute? No question that's problematic for me, except that – and I said the 23 order is certainly not on my side. However, look at the Rule 23 order. The first district said it's based upon flavel. It followed flavel. Flavel is a circuit court case. Flavel is a case which vacated a judgment. There is authorization in the Code of Civil Procedure that allows the court to do that. Under a motion for reconsideration, a judge can reconsider the facts of the case and possibly enter a different decision. 19F is not a motion for reconsideration. If this court affirms or follows the Rule 23 order, you will be sending a message, and not just a message, you will be making law that says that 19F is a motion for reconsideration, which would reopen every arbitrator's decision, every commission decision, on a motion to recall under 19F. I don't think 19F contemplated that, and I don't think the commission wants that result. So let me just pin this down. Are you saying the Rule 23 order can or cannot be used in support of contentions of collateral estoppel? What is your position? Well, it certainly can be used in support of it, but you also have the power to overrule that or to set the record straight on whether or not 19F, the words used, some of the courts say reopen, some of the courts say it's a nullity, some of the courts say you can only do what it allows you to do, correct that. There's a lot of confusion in this area. Let me mention the Alvarado case, because I was mentioning which cases are on each side. The city has liked to offer the Alvarado case as one which is in support of their position, and it's true that in part of the decision in Alvarado they say you can only reopen a case under section 19F or 19H. There you see again the confusion. They use the words reopen the case as if 19F is a reopening of the case, which is what happened here. However, Alvarado also goes on to say 19F is not a proper vehicle for rehearing or reconsideration of the merits. That's exactly the opposite, and that's why we're here. Why was the claimant's petition for review of the second arbitrator's decision withdrawn, voluntarily dismissed? Because the city paid the award. So you voluntarily dismissed the petition. Doesn't that remove from you the ability to argue against the efficacy of the arbitrator's decision? It makes it difficult. It certainly then becomes the decision of the commission. Well, I felt that it was incumbent upon the city to file some kind of a petition. At the time I filed the review. But when the city comes in and pays the original award, which I say is the only award, 19F doesn't allow you to change the award, then the case is satisfied, it's moved, there's nothing more that can be done. Wasn't there a letter, though, that was sent to you before the petition for review was withdrawn? I'm sorry? Wasn't there a letter from the city saying we paid too much by mistake before the petition for review was withdrawn? Yes. And don't think we didn't discuss that. Okay. I mean, certainly we had discussions about it. So there was fair warning, you might say, that they were going to make a claim. There was. Okay. There was. But I, very honestly, I felt that their only avenue was through the commission. I never expected that they would take this other avenue that they did by taking it to the minister. Because they had no ruling on which order was the right order. The motion that I brought under Section 18, I felt was the motion the city would have, should have, and could have, should have brought in conjunction with the review that I did. And then we would have, because the city says in their brief, what did they say, that there was an issue at that time. Well, except the city never raised the issue. You know, they wanted to send letters or talk about it in the background, but they never wanted to get in front of the commission with it. And they really should have. And it would have saved us all one heck of a lot of time. Mr. Pinnacle, I'm unfamiliar with this. The city of Chicago has some administrative hearing where they can take people before to determine who owes the city of Chicago money? The city took the position that the last order was valid, therefore. They overpaid. They overpaid. Yes. Therefore, my client had a debt back to them. We understand that. But what is this business about instituting a proceeding before the Chicago Department of Administrative Hearings? They filed a complaint at the Chicago Department of Administrative Hearings. They have a court now of their own where they decide who owes them money? Oh, that's where all the traffic tickets go. Well, we understand that one, where you have no defenses. But that's a little different. But what does that have to do with this? Thank you. Thank you. Yes, you have no defenses over there. Pardon me, but no, there was an entire hearing. No, but I understand. But what is their basis for bringing a thing like this over to that department? They claim the debt. So any time they claim someone owes them money, they get to go to their own court? Their own prosecutor gets to bring it to their own court before their own judge who said to me, counsel, when is your client ready to pay the money? I have a question. Is this under home rule powers? I'm from downstate. We have a small claims court down there. It's a, you know, in the court system, state court system. I guess that's what Justice Hoffman is asking. I mean. Yeah, but I thought that the actions for debt went to circuit courts. Yes. Not this traffic tickets we understand, but I thought the actions for debt went to the circuit court. They filed it over on Superior Street. Hmm. I was heard over on Superior Street. Has anyone challenged that procedure, by the way? Oh, I think it's been brought up in the papers. If you'll allow me, what I found more interesting was that I'm in front of a judge. He's being paid by the city. And then I take the, I take an administrative review from there. And I filed it in a chancery division because I trust the judges in the chancery division and the clerks that they have. And then I get there and they tell me, no, no, you can't be here. You've got to go down to room 1111. Yeah, well, they sent you to Municipal Law. All cases go to 1111. Well, then I realized I had no chance. And then I filed the appeal over here. And my first motion was to have it assigned to this panel. But this has a substantial workers' compensation issue attached to it. And the order was entered that that case would have been assigned to you. Until the city came in and said, no, it's not a workers' compensation claim, and they removed it. So here we are today. Okay. Thank you, counsel. Counsel, you may respond. Good morning. May it please the court. This morning I was saying. You didn't sign in, so could you, for the record, tell us who you are? I'm Suzanne Lose. I represent the city of Chicago. Okay, thank you. This morning I will explain that the commission correctly dismissed Mr. Scarpelli's petition to correct the record, filed almost two years after he voluntarily dismissed his appeal to the commission of the arbitrator's decision. The commission lacked jurisdiction to revisit that decision. In addition to the jurisdictional problem, the argument that the arbitrator lacked authority to enter that award is barred by collateral estoppel and is meritless. First of all, the commission correctly determined that it lacked jurisdiction. Back in 2009, Mr. Scarpelli's workers' compensation claim was resolved by an arbitrator. The arbitrator issued two decisions that were recalled in order to correct clerical errors. And then the second corrected decision awarded Scarpelli about $38,700, $3,300 less than the first two. Mr. Scarpelli appealed that, then voluntarily dismissed the appeal in August of 2009. He returned to the commission almost two years later after having lost in the city's action to collect its overpayment that he had made on the arbitration award, filing what he called a petition to correct the record, seeking to invalidate the arbitration award. At that point, the arbitrator's award had long since become final. The Illinois Supreme Court has made clear in Kasson's case, amongst others, the commission cannot simply go back and revisit a final award unless a statute specifically authorizes that. Under Section 19B and F, there were only two options for altering the arbitrator's decision, correcting clerical errors within 15 days or a timely petition for review filed within 30 days. And that's it. Mr. Scarpelli filed an appeal and withdrew it. The commission no longer had jurisdiction over his claim. With that decision having become final with the dismissal of the appeal, it simply does not matter whether the second corrected decision was erroneous. The commission only had jurisdiction to correct the errors in the statutorily prescribed manner. Mr. Scarpelli attempts to divert attention from that. So it doesn't really matter whether the second corrected decision was right or wrong. It's just there was no jurisdiction to do anything else, do anything about it. There was no jurisdiction to revisit whether or not that was error. That's correct. That's what your argument is. And besides the jurisdictional hurdle here, Mr. Scarpelli has another one, and that is collateral estoppel. The crux of Mr. Scarpelli's argument is that an earlier arbitration award that had been recalled should be reinstated because the arbitrator lacked authority to change the amount of the award, and therefore it's void. And that was the one that was addressed and rejected in the other proceeding. Yes. That precise question has already been raised and litigated to final judgment and rejected in a decision of this Court, which we attach in our appendix. And this specific issue is addressed on pages A4 to A9. When the city pursued its action to collect an overpayment of the arbitration award in the Department of Administrative Hearings, Mr. Scarpelli launched a defense based on the same arguments that he raises here, that the arbitrator lacked the authority to reduce the award, could only correct clerical errors, and that the second corrected decision is void. This Court rejected those arguments. The first panel of the first district appellate court rejected those arguments. And the PLA, having been denied, that decision has become final. And opposing this counsel-only argument against collateral estoppel appears to be that there are arguments that the Court didn't address about the interpretation of Section 19F, but it is clear that the Court did apply Section 19F and specifically addressed its bearing on the question whether the arbitrator's decision was void. Excuse me. Ordinarily, one appellate court decisions are not precedent for other appellate court divisions or districts. Ordinarily, if the first district reaches some decision and we disagree with that, for example, we're free to decide an issue, a legal issue, the opposite direction. But your argument is even if we disagreed with this first district decision, we're bound by it through collateral estoppel. Right. Because I do not rely on that Scarpelli decision, that first appeal, as a matter of precedent, but as a matter of collateral estoppel. And that doctrine applies whenever there's a final judgment in any court in which the same exact issue has already been litigated and decided. So there it doesn't matter if we agree with how they decide a legal principle or not. We're bound by it. That's what your argument is. Right. That's precisely. And that answers the question, too, of why it's appropriate to cite this under Rule 23, because that's an express exception and for good reason, because when the elements of collateral estoppel apply, then the party against whom it's invoked should not be able to relitigate that same issue, again, take a second bite at the apple. So whether or not Mr. Scarpelli agrees with the foundation of that ruling, the issue of the arbitrator's authority to enter the second amended decision or second corrected decision, including the impact of 19F, was fully litigated and decided against him. He cannot collaterally attack that ruling here. And also the courts, we submit the court's decision in the first Scarpelli appeal was sound. An administrative agency's decision is not void every time an administrative agency does not comply with statutory requirements. As the court in the first Scarpelli decision noted, in citing cases like Newkirk and Mueller, the focus is on whether or not the arbitrator had personal jurisdiction, subject matter jurisdiction, and the authority to enter the order that was entered. And here there's no question that the arbitrator had the authority to withdraw the first amended decision, first corrected decision, and correct it and then enter a corrected order. And if there were errors in that corrected order, the appropriate course would be to have appealed those errors directly to the commission. For all these reasons, we do submit that the judgment of the circuit court and the commission should be affirmed. Can you tell us about your court? Sure. Justice Hoffman. Sure. Well, under the Illinois municipal code, the city is authorized to create an administrative adjudication process to address ordinance violations. I can certainly submit a citation for that after argument, if you wish. And so the municipal code does contain provisions that make owing a debt to the city a violation of the code. As a result of a violation of an ordinance, not in general. It certainly specifies classes of violations of ordinance. Well, owing a debt to the city is considered. There's an ordinance that addresses that provides for how the city can collect a debt due in owing the city. And that was the subject of the litigation in the first. But is this regardless of where the debt emanates from? Well, the debt specifically provides for a debt, defines debt as including an overpayment. So an overpayment on a judgment would be a debt under the ordinance, and that's what the city collected here. And there were challenges raised in Scarpelli 1 to the Department of Administrative Hearings Authority to do this, and the court's up the line ruled that rule against Mr. Scarpelli in those arguments. Those two were decided in the first appeal in this case. I want to understand this. You have an ordinance, but I haven't seen it because page 10 of your rule 23 is missing. Where you laid out the ordinance. It's not in your appendix. You have an ordinance that says any time anyone owes the city of Chicago money, you get to bring them before the administrative hearings. It's supposed to take them to court? We have an ordinance that says when there's a failure to pay a debt, there's a procedure that you can go before the Department of Administrative Hearings to adjudicate that debt due in owing the city. At a point in time where the person who allegedly owes the debt has no rights of due process, you own the judge. He's your employee. And when you appeal it, you have no right to attack it at all. Everything that happens is prima facie true. And somebody said this comports with due process. I don't, you know, I don't recognize those due process challenges have been raised. Well, they've been raised as against your administrative hearing and your traffic tickets. They've gone all over the Seventh Circuit on those. But the question I have is a broader one. You say you have an ordinance that says any time the city of Chicago claims that someone owes them a debt, they get to bring them to their private judges at their private court? I don't know. I mean, these are administrative judges who handle, much like the traffic tickets. They're employees who you can hire and fire at your will is who they are. Well. We know who they are. The, this is much like the traffic tickets situation where that, those due process challenges have been upheld time and again. This is what the Illinois Municipal Code is ordering for this. The Illinois Municipal Code authorizes the city of Chicago to set up. For an ordinance violation. For an ordinance violation. You're saying it's any time a debt is allegedly owed to the city. You can bring them in. Well, the ordinance defines a debt. And all of this is, was laid out in the first appeal. And I can give you citations to it, but that's not the subject of this appeal. That has been fully litigated right before. No, no, ma'am. I know what the questions in this appeal are. I just asked another question. And, but I want to understand something. The Municipal Code says that you can create this court, these administrative hearings for, to adjudicate ordinance violations.  our ordinance. A failure to pay a debt due is an ordinance violation. And that is in the Municipal Code of Chicago 129. No, no. We understand that you passed an ordinance that said that anybody that owes you money has violated your ordinance. But the Municipal Code allows you to create the administrative hearings for ordinance violations. It occurs to me that based on that, I suppose you could eliminate all criminal cases, too, and bring them before your private judges. Because you've got ordinances. They would have violated the ordinances, so you might as well just bring them to your own private judges and be done with us. I'm not sure that I follow an ordinance. I mean, some people, I recall, I'm chiding you a little bit. Because I recall one of the aldermen who was present when this was all passed suggested the creation of this was the creation of a kangaroo court, but then he withdrew it by saying it was an insult to the marsupials of this world. Remember, this is all being recorded, so you may want to circumspect in your comments. You know, I will. I don't understand how a debt, by reason of overpayment, was converted into an ordinance violation. That's the one that I don't understand. And I can understand why you have every right in the world to go to court to suggest you paid the man too much money and he's got to give it back. Well, because the ordinance provides that a failure to pay a debt due and owing is an ordinance violation. That's the provision that we proceeded under in the first case. Now, is that a debt due and owing by anyone or only by an agent or an employee of the city? By anyone. I mean, it could be an overpayment in some other context. So if, indeed, the city charges for something on a home, an installation or something, they say every home has to have a particular kind of light and they install it and the homeowner doesn't, or even the tenant perhaps, but probably the homeowner, doesn't pay the city for the installation, that's where they go. Am I correct? I believe so. I'd want to study the ordinance closer to see if there are any exceptions or anything like that might apply under any particular circumstances. But yes, this is a provision that the City of Chicago does use to go after certain debts owed, including overpayments. Counsel, there's nothing that impairs the integrity of that Rule 23 order in terms of a collateral estoppel effect if you're arguing here. Correct? That's correct. I'm aware of no exceptions. All the elements are met here. All of these issues could have been raised in that case. That was the subject matter of that appeal in that case. And at this point, there's a final judgment. The denial PLA is a final judgment. All issues decided in that case are binding. Thank you. Thank you, Counsel. Counsel may respond. Mr. Spangolo, regardless of our thoughts about the due process of these administrative hearings, the point of the matter is, how do you get around the collateral estoppel argument? It's been decided. It was decided. The opinion is here. Rule 23 is here. I'm of the belief that you can – that it is not precedential and, therefore, you can make your own decision. Well, it's not a question of being precedential. It's a question of whether it's subject to the application of the doctrine of collateral estoppel. You had an opportunity to argue this point. You argued it, and it's been decided against you. So now the question is, it's not a question of being precedent. We're not citing it for precedential purposes. They're citing it in support of an argument of collateral estoppel, which they have every right to do. Well, that was – I've got to go back to my documents. I don't recall that being a reason why the Industrial Commission turned down my request to have the record corrected. I remember them saying, we have a final order, therefore, it's a final order. And that's what I'm trying to get to, final is final. They turned it down because you withdrew your petition for review, and the arbitrator's decision then became their decision. That was the end of it. And then we have this case where you raise the question or attempt to litigate the question of the efficacy of the award of overpayment. And it gets decided. How do you attack it again? Not if the order is void. See, sometimes you've got to make this argument from the back end forward. And that is, is that last order void? But that's the issue that's been decided in the other case. And that's what counsel is asserting is subject to collateral estoppel. In the other decision, voidness was addressed. And the appellate court indicated that the order was not void. Now, in line with that, I do have a question for you. In your reply brief, you indicate that the arbitrator's second corrective decision is void, as the arbitrator did not have subject matter jurisdiction to do what he did. In the other case, the First District writes, Scarpelli does not deny that the arbitrator had jurisdiction over the parties and the subject matter of his claim for workers' compensation. He argues that the arbitrator lacked inherent authority to enter the May decision. So is it a calculated decision here in this Court to abandon the inherent authority claim of voidness and argue voidness based on subject matter jurisdiction? In other words, do you think you can get around the operation of collateral estoppel by asserting a different basis for voidness? No, that's where sometimes we get our words tied together too much. Subject matter, authority, jurisdiction. Separate bases for arguing. There are like three shells between trying to figure out which one the P is under. Is there a difference between inherent authority and subject matter jurisdiction? That's really the question. I think in this case they're one and the same. Okay. And part of this, I think one thing I wanted to touch on, is I had confidence, I always have confidence in this panel, but I had particular confidence when you came out with the Wooddale electric case only I think two weeks after I filed my brief and I immediately came in and filed a motion for additional authority. And in that case you recognized that part of an order, part is valid, part is void. You had no problem saying it's void. Let's move on with the proper part of the order. I think it's very similar to what we have here, what I've been arguing here. I think you have a right to. Mr. Spangoli. Yes. In their decision, the prior case, since following Newark, we find that the arbitrator here had personal and subject matter jurisdiction to enter the main decision, even if we assume that the arbitrator in the main decision did not merely correct clerical errors in the April decision. Scarpelli cannot successfully mount a collateral attack on the May decision in this proceeding. The May decision stands as the commission's decision on Scarpelli's claim for the 2,000 injury. How do you get around the collateral estoppel effect of that paragraph? You can't attack it. It's already been decided. In that principle that void is void and you can be collaterally attacked. They've decided it wasn't void. They decided that that arbitrator had personal and subject matter jurisdiction. Once they've decided it that way and you're the same party arguing the same order, it occurs to me that you're bound. You can't keep arguing the same void. You lose void. You argue void. You lose void. You argue it again. It's got to end somewhere. I'm going to go back to something I said earlier. If that order is affirmed, reaffirmed in your decision here, you will have said that the court is correct in saying that section 19F is a motion to vacate and for reconsideration. Oh, no, we won't. We won't say we don't have, based on collateral estoppel, you can't argue that point again. That's all we would have said. We never would have said we agreed with it. We only said you can't argue it. Thank you, counsel. Thank you all. Thank you, counsel, both for your arguments in this matter.